THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:

DATED: August 2, 2018



Susan V. Kelley
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re<br>Jeffery D. Anderson and<br>Lori J. Anderson,<br>        Debtors. | Chapter 7<br><br>Case No. 16-28979-svk |
| Anderson Tooling, Inc.,<br>        Plaintiff,<br>v.<br><br>Jeffery D. Anderson and<br>Lori J. Anderson,<br>        Defendants. | Adversary No. 16-2465 |

**DECISION AND ORDER GRANTING IN PART
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

      Anderson Tooling, Inc. ("ATI") obtained a judgment against Jeffery and Lori Anderson[1] in Iowa state court. After the Debtors filed this bankruptcy case, ATI filed a Complaint to determine the dischargeability of the debt represented by the judgment. ATI then filed a Motion for Partial Judgment on the Pleadings, asserting that the jury verdict establishes the elements of a debt "for willful and malicious injury by the debtor to another entity or to the property of another

---

[1] ATI is a family business owned by Jeffery Anderson's brother and his brother's wife, and to avoid confusion, this decision will refer to Jeffery and Lori Anderson as "Jeffery" and "Lori" or the "Debtors."

entity" under 11 U.S.C. § 523(a)(6). The Motion also asserted that ATI's judgment against Lori is nondischargeable. However, after the Motion was filed, the judgment against Lori was reversed on appeal.

## BACKGROUND

The Motion seeks either partial judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure as incorporated in adversary proceedings by Bankruptcy Rule 7012, or partial summary judgment under Rule 56(a), as incorporated by Bankruptcy Rule 7056. Both parties submitted affidavits, and the Court properly considers the Motion as a motion for partial summary judgment. *See* Fed. R. Civ. P. 12(d) (stating that if a motion for judgment on the pleadings presents matters outside of the pleadings, the court must treat the motion as a motion for summary judgment). In later briefing, ATI refers to the Motion as a motion for summary judgment, and the parties have regarded it in this way.

Summary judgment is appropriate if the pleadings and affidavits on file show there is no genuine dispute as to any material fact and ATI is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Omega Healthcare Inv'rs, Inc. v. Res-Care, Inc.*, 475 F.3d 853, 857 (7th Cir. 2007). The Court views all facts and draws all inferences in the light most favorable to the Debtors as the non-moving parties. *Omega Healthcare Inv'rs, Inc.*, 475 F.3d at 857.

## UNDISPUTED FACTS

According to the Complaint, ATI is a family-owned business that lifts, moves and installs large industrial equipment, retools used industrial equipment, and purchases and sells industrial equipment and parts. Jeffery's brother, Dean Anderson, and Dean's wife, Carol Anderson, are ATI's shareholders. Jeffery was the general manager of the business.

After the business relationship soured, Jeffery sued ATI in Jefferson County, Iowa, claiming that ATI had wrongfully terminated him because he was pursuing unpaid wages. ATI filed a counterclaim alleging that Jeffery had misappropriated business opportunities by diverting jobs to his own business, Fabrication and Construction Services ("FabCon") (the "tortious interference claim"). ATI's counterclaim also alleged that Jeffery had diverted funds and other property to himself and FabCon. ATI filed a separate suit against Lori and FabCon, and the cases were consolidated for trial.

The jury found Jeffery liable on the tortious interference claim and awarded ATI damages of $336,072.54. The trial court found Lori jointly and severally liable for this amount, based on jury findings that Lori conspired with Jeffery. On appeal, the Iowa Court of Appeals determined that the lower court erred and found that Lori "should not be held jointly and severally liable for that part of the judgment pertaining to the jury's damage award for Jeff's intentional interference with ATI's prospective relationships." (Iowa Court of Appeals Decision, Docket No. 20 at 18.) ATI filed an application for further review that is pending. Jeffery's liability is established and is not the subject of further review.

Given this procedural posture, the Motion seeks a nondischargeability determination against Jeffery based on the tortious interference claim. ATI acknowledged in its brief that the Iowa Court of Appeals decision "forecloses the possibility of a personal nondischargeability judgment against Lori Anderson" unless it is reversed on appeal. (Docket No. 21 at 2.) If this Court determines that Jeffery's debt to ATI is nondischargeable, ATI asserts that it may also collect the debt from Jeffery's interest in property in which Lori also has an interest, including marital property. In the event the Iowa Supreme Court reinstates Lori's liability, ATI requests leave to seek an amendment of this Court's judgment. (*Id.* at 10.)

ANALYSIS

I.  The Iowa Judgment Precludes the Debtors from Relitigating the Issue of Whether the Damages Against Jeffery on the Tortious Interference Claim Are Nondischargeable Under § 523(a)(6) of the Bankruptcy Code

Ordinarily, a plaintiff seeking to establish that a debt is excepted from a debtor's discharge must do so by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279 (1991). However, "rather than prove the nondischargeability of the debt in the bankruptcy court, a creditor may invoke issue preclusion to avoid future litigation of the elements necessary to meet a § 523(a) exception." *Gerard v. Gerard*, 780 F.3d 806, 810 (7th Cir. 2015). Here, ATI asserts that the state court judgment establishes the elements of a nondischargeability claim under § 523(a)(6) and that the doctrine of issue preclusion bars the Debtors from relitigating these issues.

Generally, issue preclusion "prevents parties to a prior action in which judgment has been entered from relitigating in a subsequent action issues raised and resolved in the previous action." *Hunter v. City of Des Moines*, 300 N.W.2d 121, 123 (Iowa 1981). "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Id.* (quoting Restatement (Second) of Judgments § 68 (Tentative Draft No. 4, 1977)). Federal courts must give a state court judgment the same preclusive effect as courts in that State would afford the judgment. *See* 28 U.S.C. § 1738; *DeGuelle v. Camilli*, 724 F.3d 933, 937 (7th Cir. 2013). Accordingly, the Court looks to Iowa law to determine whether issue preclusion applies in this adversary proceeding.

4

Under Iowa law, for issue preclusion to apply, "(1) the issue in the present case must be identical, (2) the issue must have been raised and litigated in the prior action, (3) the issue must have been material and relevant to the disposition of the prior case, and (4) the determination of the issue in the prior action must have been essential to the resulting judgment." *Fischer v. City of Sioux City*, 654 N.W.2d 544, 547 (Iowa 2002). If the issues in the prior action and the nondischargeability action are identical and the judgment meets the other criteria, the Court "cannot revisit the issue because the debt is precluded from discharge." *Gerard*, 780 F.3d at 810. If "the jury's findings are inconclusive or were not necessary to the state court judgment, then issue preclusion does not apply." *Id.* In such a case, the Court must determine through trial whether the debt satisfies the elements of § 523(a)(6).

Here, ATI asserts that the state court judgment preclusively establishes that the debt is nondischargeable under § 523(a)(6). Under Iowa law, to succeed on a claim for interference with a prospective business relationship, a plaintiff must prove: (1) the plaintiff had a prospective business relationship with a party; (2) the defendant knew of the prospective relationship; (3) the defendant "intentionally and improperly interfered" with the relationship through certain actions; (4) the interference prevented the plaintiff from entering or continuing the relationship; and (5) the amount of damages. *See Nesler v. Fisher & Co.*, 452 N.W.2d 191, 198-99 (Iowa 1990) (quoting the Iowa civil jury instructions). To meet the intent requirement, the Iowa Supreme Court has noted that a "purpose on the defendant's part to financially injure or destroy the plaintiff is essential." *Id.* at 199 (quoting *Page Cty. Appliance Ctr., Inc. v. Honeywell, Inc.*, 347 N.W.2d 171, 177 (Iowa 1984)).

Section 523(a)(6) of the Bankruptcy Code excepts from discharge debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." According

5

Case 16-02465-svk    Doc 24    Filed 08/02/18    Page 5 of 13

to the Supreme Court, "willfulness" requires "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). Thus, "debts arising from recklessly or negligently inflicted injuries" do not come within the exception. *Id.* at 64. According to the Seventh Circuit, willfulness exists if the "debtor's motive was to inflict the injury, or the debtor's act was substantially certain to result in injury." *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir. 2013) (quoting *Bukowski v. Patel*, 266 B.R. 838, 844 (E.D. Wis. 2001)). The court of appeals also has stated that "maliciousness" requires that a debtor acted "in conscious disregard of [his] duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *Id.* (alteration in original) (quoting *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994)).

To support its Motion, ATI submitted copies of the jury instructions and the jury verdict form from the Iowa state court case. The judge instructed the jury as follows:

> ATI claims that Jeffery Anderson, Lori Anderson and FabCon intentionally interfered with prospective business relationships of ATI. In order to recover on this claim, ATI must prove all of the following:
>
> 1. ATI had prospective business relationships with Dr. Pepper, Whirlpool, American Ordnance, Riverbend Plastics, or others.
>
> 2. Jeffery Anderson, Lori Anderson or FabCon knew of any or all of the prospective business relationships.
>
> 3. Jeffery Anderson, Lori Anderson and FabCon intentionally and improperly interfered with any or all of the prospective business relationships between ATI and Dr. Pepper, Whirlpool, American Ordnance, Riverbend Plastics, or others by submitting bids on behalf of FabCon.
>
> 4. The interference caused ATI not to enter into the prospective business relationships.
>
> 5. The nature and amount of damage.

6

> If ATI has failed to prove any one or more of these propositions, it is not entitled to damages. If ATI has proved all of these propositions, it is entitled to damages in some amount.

(Docket No. 10-3 at 13-14.) As to Jeffery, the jury answered "yes" to these questions and found that ATI suffered damages in the amount of $336,072.54 as a result. (Docket No. 10-1 at 3-4.)

The Debtors' only serious challenge to ATI's argument is that the Court cannot determine the amount of debt that is nondischargeable based on the jury questions and answers. They argue that only the question corresponding to paragraph 3 of the jury instructions contained the word "improper." Specifically, they point to Question No. 15 on the jury verdict form, asking the jury to "State the amount of damages sustained by Anderson Tooling, Inc. as a result of Jeffery Anderson's intentional interference with its prospective business relationships." (Docket No. 10-1 at 4.) Because the question did not contain the word "improper," the Debtors argue that the Court cannot determine what portion of the damages was due to conduct falling within the scope of § 523(a)(6).

This argument fails. The questions leading up to the damages question establish the elements of the tort of intentional interference with business relationships. The final paragraph of the jury instructions related to the claim makes this clear: "If ATI has failed to prove any one or more of these propositions, it is not entitled to damages. If ATI has proved all of these propositions, it is entitled to damages in some amount." (Docket No. 10-3 at 14.) One of the elements is that the interference be improper, as stated in Question No. 12: "Did Jeffery Anderson intentionally and improperly interfere with any or all of the relationships?" (Docket No. 10-1 at 3.) Question No. 15 simply describes the tort in asking the jury to state the amount of the resulting damages. The fact that the word "improper" is omitted does not establish that the

7

jury awarded a portion of the damages based on some conduct other than the intentional interference with ATI's prospective business relationships.

The jury's findings preclusively establish that Jeffery acted willfully and maliciously. Applying Iowa law to the facts, the jury found that Jeffery's motive was to inflict injury, as a finding that he "intentionally and improperly interfered with" relationships necessarily required the jury to find that the purpose of his actions was to "financially injure or destroy" ATI. "Maliciousness" for the purpose of § 523(a)(6) may be proven by a showing that a defendant acted without just cause or excuse, and here the jury was required to find improper motive. *See Preferred Mktg. Assocs. Co. v. Hawkeye Nat'l Life Ins. Co.*, 452 N.W.2d 389, 396 (Iowa 1990) ("improper motive" is an essential element of the tort). ATI has established that the elements of a § 523(a)(6) claim are found in the jury's verdict. Accordingly, the Court will enter a judgment determining that Jeffery's debt to ATI established in the state court judgment on the tortious interference claim is nondischargeable.

II.     ATI Is Not Entitled to Judgment Against Lori Based on the Judgment of Nondischargeability Against Jeffery

ATI requests that the Court grant judgment "against Lori Anderson for the exception of discharge of Jeffery Anderson's interest in property in which Lori Anderson also has an interest, including property that is designated marital property under Wisconsin law." (Docket No. 21 at 10.) But the underlying state court judgment was entered in Iowa, and there is no disagreement that the dispute arose while both Debtors were domiciled in Iowa. The parties also agree that the substantive law of Iowa determines ATI's rights against the Debtors.

The Wisconsin Marital Property Act ("MPA") does not govern obligations arising from acts that occurred before spouses were domiciled in Wisconsin. Section 766.55(3), part of the section on obligations of spouses, suggests this conclusion. It provides in part:

8

> This chapter does not alter the relationship between spouses and their creditors with respect to any property or obligation in existence on the determination date.

In 1991, the Wisconsin Legislature added another provision to the MPA affirmatively establishing that the MPA does not govern obligations that arose before a married couple moved to Wisconsin. Section 766.03(6) provides:

> This chapter does not affect the property available to satisfy an obligation incurred by a spouse that is attributable to an obligation arising when one or both spouses are not domiciled in this state or to an act or omission occurring when one or both spouses are not domiciled in this state.

According to the Legislative Council Notes, "The substance of this provision is implicit under ch. 766. It is made explicit because its absence, in light of the detailed provisions under s. 766.55 on what property is available to satisfy obligations, has raised questions." Expert commentators agree: "It seems obvious that chapter 766 does not affect the property available to satisfy an obligation incurred or arising at a time when the Act does not apply because one or both spouses are domiciled elsewhere. The Legislative Council Notes to section 766.03(6) view that subsection as consistent with other provisions in section 766.55 that leave creditors where they otherwise would have been in the absence of the Act." 3 Keith A. Christiansen et al., *Marital Property Law in Wisconsin* § 13.17, at 33 (4th ed. 2010). As a result, if the "obligation were incurred in the state of former domicile, its laws will presumably continue to apply." *Id.* at 26.

Even before the addition of § 766.03(6), Judge Martin reached the conclusion that the MPA did not apply to alter the relationship between a judgment debtor and creditor when the judgment debtor and his wife were Ohio residents at the time the judgment was entered. Ohio law governed the question of what property was available to satisfy the judgment. *See In re Sweitzer*, 111 B.R. 792 (Bankr. W.D. Wis. 1990). The authors of *Marital Property Law in*

9

*Wisconsin* found this interpretation to be consistent with the state of the law after the addition of the provision. *See* § 13.17, at 33.

In light of § 766.03(6), the MPA does not apply to the collection of ATI's judgment against Jeffery. Instead, Iowa law governs the determination of the property available to satisfy the nondischargeable judgment. Under Iowa law, ATI may only enforce the nondischargeable judgment against Jeffery and Jeffery's property. *See* Iowa Code § 597.19 ("For civil injuries committed by a married person, damages may be recovered from the person alone, and the partner shall not be liable therefor, except in cases where the partner would be jointly liable if the marriage did not exist.").

ATI's request for a judgment against Lori asserts in a footnote that the result would be "consistent with Wisconsin law on obligations for torts committed by a spouse during marriage. *See* Wis. Stat. § 766.55(cm)." (Docket No. 21 at 8.) That section provides that a spouse's tort obligation incurred during marriage may be satisfied from that spouse's individual property and the spouse's interest in marital property.

But the analogy does not apply here. Application of § 766.55(2)(cm) of the MPA is irrelevant because the MPA does not determine what property is available to satisfy ATI's judgment against Jeffery. Thus, there is no reason the result here should be consistent with a provision of that Act. Section 766.55(2)(cm) "applies only to torts committed during marriage" and because of § 766.01(8)'s definition of "during marriage," "thus applies only to torts committed while both spouses reside in Wisconsin after the determination date." 2 *Marital Property Law in Wisconsin* § 6.30, at 39. Accordingly, "torts committed after January 1, 1986, while the spouses were married but before their determination date (i.e., while the spouses were domiciled in another jurisdiction) likewise are recoverable without reference to the Act." *Id.*

10

In sum, Iowa law governs ATI's recovery of the judgment against Jeffery, not Wisconsin's Marital Property Act. Accordingly, ATI is not entitled to summary judgment against Lori or her property interests.

III. ATI's Ability to Seek Leave to Amend the Court's Order Remains Subject to the Applicable Rules

ATI's Motion requested summary judgment on a portion of Count 1 of the Complaint, which requested a judgment against both Debtors pursuant to § 523(a)(6).[2] As discussed, the Motion will be granted as to Jeffery and judgment will be entered on Count 1 against Jeffery as to the portion of the state court judgment awarding damages on the tortious interference claim. Summary judgment on Count 1 against Lori will be denied.[3] In briefing, ATI requests leave to seek an amendment of the Court's judgment in the event the Iowa Supreme Court reinstates the trial court's conspiracy judgment against Lori. (Docket No. 21 at 10.) ATI does not cite any authority in support of this request.

Under Rule 54(b) of the Federal Rules of Civil Procedure, as incorporated in adversary proceedings by Bankruptcy Rule 7054(a):

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Accordingly, if the Iowa Supreme Court reverses the Court of Appeals' decision, this Court could potentially consider whether Lori is precluded from litigating the dischargeability of her

---

[2] Count 1 also included allegations that: "Jeffery Anderson's and Lori Anderson's wrongful direction of Anderson Tooling to make payments to Jeffery Anderson and JDA, and their wrongful diversion of moving cleanup work from Anderson Tooling to Fabcon resulted in damage to Anderson Tooling of $436,225.18." Complaint at ¶ 72.

[3] Counts 2 and 3 of the Complaint, which were not addressed in the Motion, also remain pending. Count 2 alleges the debt is nondischargeable because both Debtors committed fraud or defalcation while acting in a fiduciary capacity pursuant to § 523(a)(4), and Count 3 alleges both Debtors committed embezzlement or larceny as defined in § 523(a)(4).

resulting debt to ATI. However, this would depend on the procedural posture of this adversary proceeding at the time of the decision. As ATI acknowledges, its application to the Iowa Supreme Court for further review is pending, but if the Supreme Court grants the application, "it may take some time before the court renders a decision." (Docket No. 21 at 10.)

In the event the Supreme Court accepts the application for further review and reverses the Court of Appeals, further litigation would be required to determine whether the Debtors are precluded from relitigating the dischargeability of Lori's debt. The judgment against Lori was on a conspiracy claim, not a tortious interference claim. Thus, the analysis about whether issue preclusion ought to apply would be different than the analysis conducted in this Decision. The parties only partially briefed the issue, as the judgment against Lori had been reversed by the time the Debtors filed their brief. (*See* Docket No. 19 at 2.) The issue is not ripe for decision now.

## CONCLUSION

ATI's Motion sought a judgment of nondischargeability under § 523(a)(6) against the Debtors based on part of a judgment entered against them in Iowa state court. The state court judgment against Jeffery on the tortious interference claim establishes all the elements of the discharge exception for willful and malicious injury, and issue preclusion applies to render that portion of the judgment nondischargeable as to Jeffery. However, the Iowa Court of Appeals reversed the judgment against Lori, and ATI's Motion must be denied as to Lori. The pre-determination date judgment is not governed by the Wisconsin Marital Property Act, and no extension of the judgment under that Act is appropriate. Finally, ATI's ability to seek leave to amend this decision is subject to the applicable rules. Accordingly,

IT IS THEREFORE ORDERED: summary judgment on Count 1 of the Complaint against Jeffery Anderson is granted as to the damages of $336,072.54 owed by Jeffery to Anderson Tooling, Inc. based on the tortious interference claim. This debt is not dischargeable under 11 U.S.C. § 523(a)(6).

IT IS FURTHER ORDERED: summary judgment on Count 1 of the Complaint against Lori Anderson is denied.

IT IS FURTHER ORDERED: all other relief requested by ATI in the Motion is denied.

#####