So Ordered.

Dated: April 1, 2022



Katherine Maloney Perhach
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re:<br>Jeffery D. Anderson and<br>Lori J. Anderson,<br>               Debtors. | Chapter 7<br><br>Case No. 16-28979-kmp |
| Anderson Tooling, Inc.,<br>               Plaintiff,<br>v.<br>Jeffery D. Anderson and<br>Lori J. Anderson,<br>               Defendants. | Adv. No. 16-2465-kmp |

## DECISION AND ORDER DISMISSING CLAIMS AGAINST LORI ANDERSON

After a trial, the Court has completed the final chapter in this proceeding to determine dischargeability of a state court judgment against Jeffery Anderson on claims for breach of fiduciary duty and intentional interference with the Plaintiff's prospective business relationships and against Lori Anderson on a conspiracy claim. For the reasons below, the Court will dismiss the claims against Lori Anderson.

### Background and Procedural Posture

Plaintiff Anderson Tooling, Inc. ("ATI") is a corporation in the business of machine tooling and rigging. At the relevant times, it was owned by Dean Anderson and his former wife, Carol. Dean's brother, Jeffery Anderson, worked for the company in a management position, and Jeffery's wife, Lori Anderson, worked as the company's bookkeeper. While working at ATI, Jeffery formed Fabrication and Construction Services, Inc. ("FabCon") to "fabricate steel and perform millwright services for small-scale jobs." Stipulated Facts ¶ 19 (Docket No. 110). After a building used by ATI flooded, Dean and Jeffery settled on a plan to have FabCon bid to

remove ATI's equipment from the building and then move the equipment back into the building after repairs and cleaning were complete. *Id.* at ¶¶ 24-25. After this project, FabCon began providing rigging services in competition with ATI. Jeffery worked at ATI until Dean fired him in 2011.

Jeffery sued ATI, Dean, and Carol in Iowa state court, asserting claims for violation of the Iowa Wage Payment Collection Law, breach of contract, tortious discharge, and interference with contractual relations. ATI responded with counterclaims against Jeffery for conversion, interference with a prospective business advantage, breach of fiduciary duty, and misappropriation of trade secrets. ATI also sued Lori and FabCon, asserting a claim against Lori for breach of fiduciary duty, and claims against Lori and FabCon for conversion, interference with a prospective business advantage, and conspiracy. The lawsuits were consolidated for trial. Lori stated during the course of the trial in this adversary proceeding that she testified for fifteen minutes at the Iowa jury trial.

After a thirteen-day jury trial, with one hundred and sixty exhibits, the jury was given two verdict forms with sixty-nine questions, and twenty-two pages of jury instructions. Stipulation Regarding Jury Verdicts and Jury Instructions from the Iowa State Court Trial ¶ 1, Ex. A-C (Docket No. 111). The first verdict form concerned Jeffery's claims against ATI, Dean, and Carol. *Id.*, Ex. A. The second verdict form concerned ATI's claims against Jeffery, Lori, and FabCon. *Id.*, Ex. B. The jury found no conversion of ATI's property by Jeffery, Lori, or FabCon. However, the jury found ATI had prospective business relationships with Dr. Pepper, Whirlpool, Riverbend Plastics, American Ordinance, and others with which Jeffery intentionally and improperly interfered to ATI's detriment and caused ATI damages of $336,072.54. Though the jury found that both Lori and FabCon knew of ATI's prospective relationships, the jury found only FabCon intentionally and improperly interfered with the potential relationships, but that the interference did not cause ATI not to enter into any of the prospective relationships. Additionally, the jury found no breach of fiduciary duty by Lori, but it found Jeffery breached his fiduciary duty to ATI and caused ATI damages of $436,225.18. The jury also found Jeffery misappropriated ATI's trade secrets, but the misappropriation did not cause ATI damages.

On ATI's conspiracy claim, the jury answered as follows:

X. Conspiracy

Question No. 38: Did Jeffery Anderson commit any of the wrongs of conversion, interference with a prospective business advantage, breach of fiduciary duty, or misappropriation of trade secrets?

Answer "yes" or "no."

Answer: Yes

Question No. 39: Did Lori Anderson and Fabrication and Construction Services, Inc. participate in a conspiracy with Jeffery Anderson to appropriate funds and projects belonging to Anderson Tooling, Inc.

> Answer "yes" or "no."
>
> Answer: Yes
>
> Question No. 40: Was Anderson Tooling, Inc. damaged as a result of the conspiracy?
>
> Answer "yes" or "no."
>
> Answer: Yes
>
> Question No. 41: State the amount of damages sustained by Anderson Tooling, Inc. as a result of the conspiracy.
>
> Answer: $0 - duplication

The jury found the conduct of Jeffery, Lori, and FabCon constituted willful and wanton disregard of the rights of ATI, Dean, and Carol, but it awarded no punitive damages. Lastly, the jury found the conduct of Jeffery, Lori, and FabCon was not directed specifically at ATI, Dean, and Carol.

Based upon the jury verdict, the Iowa court entered a judgment in favor of ATI and against Jeffery in the amount of $772,297.72 in compensatory damages. ATI filed a post-trial motion requesting that the judgment on the verdict against Jeffery be entered against Jeffery, Lori, and FabCon jointly and severally. The trial court granted ATI's post-trial motion and amended and modified its judgment to provide judgment in favor of ATI and against Jeff, Lori, and FabCon, jointly and severally, in the amount of $772,297.72 based on the jury's finding that Lori and FabCon conspired with Jeffery in his wrongful conduct. Jeffery, Lori, and FabCon filed an appeal with the Iowa Court of Appeals, challenging the sufficiency of the evidence to support some of the jury's verdicts against them, asserting that the jury's verdict was inconsistent in several respects, and arguing that the trial court erred in granting ATI's motion to add Lori and FabCon to the judgment as jointly and severally liable for the judgment amount.

On September 9, 2016, Jeffery and Lori Anderson filed a Chapter 7 bankruptcy petition in this Court. On December 12, 2016, ATI filed an adversary complaint requesting a determination that the debt represented by the Iowa judgment should be excepted from discharge under § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny and under § 523(a)(6) for willful and malicious damage to property. Relying upon the jury's verdict in Iowa, ATI filed a motion for summary judgment, seeking a determination that the debt owed by Jeffery and Lori was excepted from discharge under § 523(a)(6) for willful and malicious damage to property (the "First Motion for Summary Judgment").

While the First Motion for Summary Judgment was pending in this adversary proceeding, the Iowa Court of Appeals reversed the judgment against Lori on the conspiracy claim. *See Anderson v. Anderson Tooling, Inc.*, 913 N.W.2d 273 (Iowa Ct. App. 2018). The Iowa Court of

Appeals found that "the district court should not have amended and modified its judgment to provide judgment in favor of ATI against Lori and FabCon, both jointly and severally."

Meanwhile, in this adversary proceeding, this Court applied issue preclusion and granted ATI summary judgment as to Jeffery, finding that under Iowa law, the jury verdict on the tortious interference claim against Jeffery established all elements of § 523(a)(6), and the $336,072.54 damage award was nondischargeable. *Anderson Tooling, Inc. v. Anderson (In re Anderson)*, Ch. 7 Case No. 16-28979-svk, Adv. No. 16-2465, 2018 WL 3726156, *4 (Bankr. E.D. Wis. Aug. 2, 2018). The Court determined that Iowa law governed recovery of the judgment against Jeffery, and not Wisconsin's Marital Property Act, so ATI was not entitled to summary judgment against Lori or her property interests. *Id.* at *5. The Court noted that in the event the Iowa Supreme Court accepted ATI's application for further review and reversed the Iowa Court of Appeals, further litigation would be required in this adversary proceeding to determine whether Lori would be precluded from relitigating the dischargeability of the conspiracy judgment entered against her. *Id.* at *6.

While ATI's petition for further review by the Iowa Supreme Court was pending, the parties entered into a stipulation resolving other portions of the adversary complaint. Specifically, they "stipulate[d] to the Court's grant and entry of a judgment against Jeffery Anderson under 11 U.S.C. § 523(a)(4) in the amount of $100,000," in addition to the $336,072.54 damage award the Court determined was nondischargeable under § 523(a)(6) (the "Stipulation"). (Docket No. 33 at ¶ 1.) They also agreed that if the Iowa Supreme Court reinstated the judgment against Lori, ATI could continue to seek a nondischargeable judgment against Lori, "but in an amount no greater than $336,072.54." *Id.* at ¶ 4b.

The Iowa Supreme Court did reinstate the conspiracy judgment against Lori, holding that the trial court did not abuse its discretion by modifying the jury verdict to extend liability to Lori and FabCon based on their participation in a conspiracy with Jeffery. *See Anderson v. Anderson Tooling, Inc.*, 928 N.W.2d 821 (Iowa 2019). The Iowa Supreme Court offered,

> In considering the conspiracy claim, a logical deduction can be drawn that the jury found the two torts committed by Jeff [breach of fiduciary duty and interference with prospective business advantage] to be the two torts that served as the basis for the conspiracy. It found Lori conspired with Jeff but followed the instructions and awarded no damages because they would have been duplicative of the damages awarded for Jeff's torts. Thus, the district court's ruling, in effect, honors the intention of the jury and correctly applies our rule of law, holding coconspirators jointly and severally liable for damages resulting from the conspiracy.

*Anderson*, 928 N.W.2d at 828. The court further noted that the trial court's modification was "a permissible nonsubstantive change because it is based on the instructions given to the jury and effectuates the jury's intent." *Id.*

ATI then filed a second motion for summary judgment (the "Second Motion for Summary Judgment"), relying upon issue preclusion and the Iowa jury verdict, and asking this Court to grant summary judgment against Lori and find that the conspiracy judgment entered in favor of ATI was excepted from discharge under § 523(a)(4) "for fraud or defalcation while acting in a fiduciary capacity" and under § 523(a)(6) "for willful and malicious injury by the debtor to another entity or to the property of another entity." Based on the parties' Stipulation, ATI's Second Motion for Summary Judgment sought a determination that $336,072.54 of its judgment against Lori was excepted from discharge under § 523(a)(4) and § 523(a)(6).

This Court denied ATI's Second Motion for Summary Judgment on its § 523(a)(4) claim against Lori. (Docket No. 51). ATI argued that Lori's liability as a co-conspirator for Jeffery's breach of fiduciary duty was nondischargeable under § 523(a)(4). The Court found that neither the Iowa jury verdict nor the undisputed facts presented in support of the Second Motion for Summary Judgment demonstrated that Lori or Jeffery acted as a "fiduciary" under § 523(a)(4). The Iowa jury specifically found that Lori did not breach a fiduciary duty. The Iowa jury did find that Jeffery breached a fiduciary duty, but a finding that Jeffery was a fiduciary under Iowa law was insufficient to establish that he acted as a fiduciary under § 523(a)(4). Based upon the undisputed facts presented, the Court was unable to find on summary judgment that Jeffery was a fiduciary and therefore the Court was also unable to impute any liability for Jeffery's breach of fiduciary duty to Lori based on Lori's participation in a conspiracy.

This Court also denied ATI's Second Motion for Summary Judgment on its § 523(a)(6) claim against Lori, holding that (1) the Iowa jury's verdict that Lori's actions were "willful and wanton" did not establish a "willful and malicious injury" under § 523(a)(6); and (2) Lori's liability on the conspiracy claim did not establish a "willful and malicious injury by [Lori]" without some evidence of the scheme perpetrated by Lori, the extent to which Lori's independent acts caused injury to ATI, and whether Lori's intent rose to the level of "willful and malicious." The Iowa jury verdict as to Lori did not clearly show that her motive was to inflict injury or that her acts were substantially certain to result in injury. The verdict also did not preclusively establish a sufficient causal connection between Lori's actions and an injury to ATI for the Court to find an "injury by the debtor." The verdict provided no information about the common scheme for Jeffery to breach his fiduciary duty and commit tortious interference, nor did it provide information about what acts Lori and FabCon took in furtherance of this conspiracy.

Having denied ATI's Second Motion for Summary Judgment, the Court set the adversary proceeding for a three-day trial. After considering the evidence and arguments of the parties, and for the reasons noted below, the Court dismisses the claims against Lori, finding that ATI did not prove its claims against Lori by a preponderance of the evidence. *See Estate of Cora v. Jahrling (In re Jahrling)*, 816 F.3d 921, 925 (7th Cir. 2016) (citing *Grogan v. Garner*, 498 U.S. 279 (1991)) (the "objecting creditor bears the burden of proving by a preponderance of the evidence that an exception to discharge applies").

## I. The Evidence Presented at Trial Did Not Establish a § 523(a)(4) Claim Against Lori for "Fraud or Defalcation While Acting in a Fiduciary Capacity."

Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity." In its Complaint, ATI asserted that Jeffery Anderson and Lori Anderson were fiduciaries of ATI while they were employed there and acted in a fiduciary capacity concerning ATI's financial performance and recordkeeping. ATI further asserted that Jeffery breached his fiduciary duty to Anderson Tooling by, among other actions, directing payments to himself that ATI did not owe him, diverting cleanup and moving work covered by an insurance policy away from ATI and to FabCon, appropriating insurance payments and diverting them to FabCon, and depriving ATI of funds necessary to pay its operating expenses. According to ATI, Lori knowingly participated in and knowingly took steps in furtherance of Jeffery's actions in violation of his fiduciary duties, including the transfer of funds and projects to Jeffery and FabCon, and the concealment of those transfers by failing to record transfers and liabilities, creating false records of payments and debts that actually did not exist, and describing or characterizing payments and debts inaccurately to hide their true nature. ATI further claimed that Lori's liability as a co-conspirator for Jeffery's breach of his fiduciary duty was nondischargeable under § 523(a)(4).

The Seventh Circuit has defined a fiduciary relationship under § 523(a)(4) as "a difference in knowledge or power between fiduciary and principal which . . . gives the former a position of ascendancy over the latter." *In re Marchiando*, 13 F.3d 1111, 1116 (7th Cir. 1994). *See also O'Shea v. Frain (In re Frain)*, 230 F.3d 1014, 1017 (7th Cir. 2000) ("A difference in knowledge or power can create a fiduciary relationship."); *In re Woldman*, 92 F.3d 546, 547 (7th Cir. 1996) ("section 523(a)(4) reaches only those fiduciary obligations in which there is substantial inequality in power or knowledge in favor of the debtor seeking the discharge and against the creditor resisting discharge"). "The fiduciary may know much more by reason of professional status, or the relation may be one that requires the principal to repose a special confidence in the fiduciary." *Marchiando*, 13 F.3d at 1116. The existence of a fiduciary relationship is a question of federal law, and not all fiduciary relationships qualify. *Frain*, 230 F.3d at 1017. "It is not sufficient to show merely that a debtor was a fiduciary under applicable state law." *Follett Higher Educ. Grp., Inc. v. Berman (In re Berman)*, 629 F.3d 761, 767 (7th Cir. 2011).

In *Frain*, the Seventh Circuit held that a fiduciary relationship existed between the debtor and other shareholders where the debtor held a position of considerable ascendancy over the other shareholders pursuant to the terms of the shareholder agreement. *Frain*, 230 F.3d at 1017. According to the Seventh Circuit, the debtor was responsible for the day-to-day business decisions of the corporation, giving him a "natural advantage" over the other two shareholders in terms of his knowledge of the corporation's finances. *Id.* However, the court found that the debtor's superior knowledge of the day-to-day operations was not sufficient in itself to establish a position of ascendancy required for a fiduciary relationship. *Id.* Rather, the determining factors giving rise to a fiduciary relationship were the debtor's "control over the day-to-day business of the corporation and ownership of 50% of the shares," which "gave him significant freedom to run the corporation as he saw fit." *Id.* at 1018. No major decisions could be made unless the debtor agreed. *Id.* He had "ultimate power over both his own employment and the

direction of the corporation." *Id.* It was "[t]his substantial concentration of power under the corporation's internal structure [that] created a fiduciary duty that fell within the meaning of section 523(a)(4)." *Berman*, 629 F.3d at 770.

The evidence presented at trial failed to demonstrate that Lori was a fiduciary of ATI. Lori was merely the bookkeeper at ATI from October 2005 until September 2009. Her job duties when she worked at ATI included issuing and collecting invoices, paying bills and vendors, entering financial data into Quickbooks, and proofreading bids for jobs. She certainly held no position of ascendancy over Dean Anderson, who was the owner of ATI and who had the final say on all financial decisions related to ATI.

ATI's argument that Lori is liable as a co-conspirator for Jeffery's breach of fiduciary duty fails because the evidence presented at trial further failed to demonstrate that Jeffery was a fiduciary of ATI under § 523(a)(4). In ATI's Second Motion for Summary Judgment, ATI argued that this Court should impute Jeffery's breach of his fiduciary duty onto Lori based upon the Iowa jury's finding that Lori participated in a conspiracy to commit tortious interference or breach of fiduciary duty. This Court held that neither the jury verdict nor the undisputed facts showed that Jeffery was a fiduciary under § 523(a)(4), so the Court could not enter summary judgment in favor of ATI on its § 523(a)(4) claim against Lori. In arriving at that conclusion, this Court examined whether there was a difference in knowledge or power giving Jeffery a position of ascendency over Dean. On summary judgment, the evidence showed:

- ATI was co-owned equally by Dean and his wife, Carol, and not owned by Jeffery.

- Jeffery was ATI's general manager. He also referred to himself as the company's chief financial officer and endorsed checks. He led the company's day-to-day operations, and his duties included making financial decisions for the company such as paying bills, directing the collection of receivables and payment of bills. He had a role in reviewing profit and loss statements, tax information and daily corporate financial information. Jeffery also created a marketing plan for the company and performed sales responsibilities.

- Dean was good at machine tooling and rigging and preferred travelling and working rigging jobs on the road but was not a "numbers guy."

- Dean had a high school diploma and completed a two-year technical education on machining. He took a math class or two at Odessa College while working in Texas and attended University of Texas-Tyler for a time but did not complete the work for a degree.

- By contrast, Jeffery had an associate degree in economics and a bachelor of science degree in industrial technology, covering engineering, machine shop activities, accounting and business management. He also obtained a Master in Business Administration in 2004.

The Court held the evidence that was presented did not establish that Jeffery stood in a fiduciary relationship to ATI. Missing from the recitation of facts was any showing that Jeffery was in a position of power or ascendancy. The fact that Jeffery managed the company while Dean was on the road and was well-suited to do so because of his education level did not demonstrate that Jeffery had anything like the "substantial concentration of power" that would let him run the business as he saw fit like the debtor in *Frain*. In fact, Jeffery had no ownership interest in ATI. Rather, ATI was co-owned by Dean and Dean's wife. Although Jeffery managed the day-to-day operations and could make decisions like directing collection of receivables and payment of bills, this was more akin to the "natural advantage" the debtor in *Frain* had over the other two shareholders because of his knowledge of the corporation's finances than a position of power or ascendancy that would support a finding that Jeffery was a fiduciary. Because neither the jury verdict nor the undisputed facts showed that Jeffery was a fiduciary under § 523(a)(4), the Court denied summary judgment to ATI on its claim that Lori was liable as a co-conspirator for Jeffery's breach of fiduciary duty.

Having failed on summary judgment to establish Jeffery's status as a fiduciary under § 523(a)(4) as the basis for an argument that the Court should impute Jeffery's breach of his fiduciary duty onto Lori, ATI attempted this showing again at trial. The evidence presented at trial likewise failed to demonstrate that Jeffery was a fiduciary under § 523(a)(4). The testimony presented at trial showed that:

- Dean had a clear supervisory role that put him in a position of power and ascendancy over Jeffery, not the other way around.

- From at least June 2005 to October 2011, Dean and his wife Carol owned ATI and were the only shareholders of ATI, with each holding approximately half of the shares. Stipulated Facts ¶ 6.

- From at least June 2005 to October 2011, Dean and Carol were the only directors of ATI. Dean was the President and Treasurer, and Carol was the Vice President and Secretary. Stipulated Facts ¶ 8.

- From at least June 2005 to October 2011, Dean was Chairman of the Board of ATI. Stipulated Facts ¶ 9.

- Jeffery had no ownership interest in ATI, despite asking Dean several times to buy into the ownership of ATI over the years.

- During the time that Jeffery worked for Anderson Tooling, Jeffery was ATI's general manager. Stipulated Facts ¶ 14.

- Jeffery was in charge of day-to-day office operations including communications with customers since Dean was often at the customers' locations working rigging jobs. Stipulated Facts ¶ 13, 15.

- Dean had the power to hire and fire Jeffery.

- Dean, not Jeffery, had the absolute final say regarding the company's finances. This was supported by the testimony of two bookkeepers who worked for the company after Lori left. This was also supported by an email from Dean to one of the bookkeepers and Jeffery with specific instructions for obtaining his permission for which bills to pay on a weekly basis: "Only checks that can be released each week will be of my ok only." Ex. 25. Dean requested "a statement of accounts by the end of Wednesday two days before" so "[o]n Friday [he could] make the decisions of who gets paid." He also requested a list of receivables on Thursday and requested "a list of payables that [the bookkeeper] and Jeff believe need the first attention on Friday." *Id.*

- Dean, not Jeffery, oversaw ATI's finances and monitored its employees' performance, telling Jeffery and the bookkeeper, "Don't wear the stress of this company. I will wear it. Just provide me the info so I can make the decisions I need to make." Ex. 25.

- Bookkeeper Elizabeth Bell testified that since ATI was Dean's company, everyone reported to Dean and requested approval from Dean before making any decisions. She further noted that Dean was in charge of all financial decisions and everything had to go through him.

- Jeffery would generally go to Dean and get his approval on questions related to financial issues and also questions related to whether ATI would have enough people for a job.

- Dean was ultimately in charge of making all financial decisions for ATI.

The evidence presented at trial did not establish that Jeffery stood in a fiduciary relationship to ATI. The testimony does not support a finding that Jeffery was in a position of power or ascendancy. The fact that Jeffery managed the company while Dean was on the road, and was well-suited to do so because of his education level, did not demonstrate that Jeffery had anything like the "substantial concentration of power" that would let him run the business as he saw fit like the debtor in *Frain*. In fact, Jeffery had no ownership interest in ATI. Rather, ATI was co-owned by Dean and Dean's wife. Although Jeffery managed the day-to-day operations, this was more akin to the "natural advantage" the debtor in *Frain* had over the other two shareholders because of his knowledge of the corporation's finances than a position of power or ascendency that would support a finding that Jeffery was a fiduciary. The testimony clearly showed that Dean had a clear supervisory role that put him in a position of power and ascendancy over Jeffery, not the other way around. Everyone at ATI reported to Dean and requested approval from Dean before making decisions. Dean, not Jeffery, was in charge of all financial decisions and everything had to go through him. Dean, not Jeffery, had the absolute final say regarding the company's finances.

The evidence presented at trial does not support a finding that Jeffery was a fiduciary under § 523(a)(4).[1]  Because the evidence presented at trial does not support a finding that Jeffery was a fiduciary under § 523(a)(4), ATI's argument that Jeffery's liability for breach of fiduciary duty extends to Lori also fails.  As a result, the Court dismisses ATI's claim against Lori for fraud or defalcation while acting in a fiduciary capacity under § 523(a)(4).

## II. The Evidence Presented at Trial Did Not Establish a § 523(a)(4) Claim Against Lori for "Embezzlement" or "Larceny."

Section 523(a)(4) excepts from discharge any debt for "embezzlement" or "larceny."  In support of its embezzlement and larceny claims, ATI argued at trial that Jeffery's special endorsement of insurance checks payable to ATI over to FabCon constituted embezzlement or larceny, that Lori forged Dean's signature on one of the checks and was liable for embezzlement or larceny based on this action, and that Lori committed embezzlement or larceny by entering "bogus loans" from Jeffery to ATI on ATI's books.

Embezzlement requires (1) the fraudulent appropriation (2) of property by a person to whom such property has been entrusted or into whose hands it has lawfully come.  *In re Weber*, 892 F.2d 534, 538 (7th Cir. 1989).  The party objecting to the dischargeability of the debt must prove the debtor acted with fraudulent intent or deceit.  *Id.*  Larceny requires a debtor to have wrongfully and with fraudulent intent taken property from its owner.  *Kaye v. Rose (In re Rose)*, 934 F.2d 901, 903 (7th Cir. 1991).  The difference between embezzlement and larceny is the manner by which the debtor obtained property, that is, whether it came into the debtor's hands lawfully or unlawfully.  ATI has not proven by a preponderance of the evidence that either Jeffery or Lori embezzled funds or committed larceny.

ATI's evidence did not show that either Jeffery or Lori committed embezzlement or larceny by endorsing checks made payable to ATI over to FabCon.  ATI presented eight checks from Cincinnati Insurance Company representing what it claimed were funds embezzled by Jeffery or Lori.  A flood occurred in one of the buildings ATI used in the spring or summer of 2009 and the checks were payment for the work required to clean up the building.  The parties stipulated that "Dean and Jeffery settled on a plan to have Fabcon bid to do the work" to remove ATI's equipment from the building and then move the equipment back into the building after repairs and cleaning were complete.  Stipulated Facts ¶¶ 24-25.  Dean testified that at the time, based on representations by Jeffery, he believed the insurance company would not pay the claim if ATI did the work.  He explained that FabCon was involved in the clean up as a medium to get funds to pay to ATI and that FabCon used ATI employees and equipment to do the work.  ATI asserted that Jeffery wrongfully appropriated the funds by signing the checks payable to ATI over to FabCon.  ATI argued that this created a debt for embezzlement or larceny based on Jeffery's conduct.  ATI further argued that establishing an embezzlement or larceny claim against Jeffery established a § 523(a)(4) claim against Lori because Lori was jointly and severally liable on the $772,297.72 judgment rendered by the Iowa jury against Jeffery.

---

[1] It was not clear whether ATI claimed that Lori committed fraud or defalcation in a fiduciary capacity, though the Complaint did allege that she was a fiduciary.  Complaint ¶ 76.  In any event, the evidence presented at trial does not support a finding that Lori was a fiduciary under § 523(a)(4).

10

However, ATI failed to show that Jeffery embezzled funds or committed larceny by endorsing insurance checks over to FabCon. Since there was no debt for embezzlement or larceny against Jeffery, no such debt could be imputed to Lori. Jeffery testified that he made special endorsements on seven checks payable to ATI, endorsing the checks over to FabCon, and that Dean had authorized him to endorse the checks. The first check at issue was made payable to Anderson Tooling, Inc. in the amount of $65,000. The endorsement read,

> Pay to the order of FCSI
> Anderson Tooling Jeff Anderson [signature]
> for deposit only FCSI

Ex. 20 at 1. The second check for the same amount was endorsed,

> Pay to the order of
> Fabrication Construction Services Jeff Anderson [signature]
> for deposit only FCSI

*Id.* at 2. The third check, for $57,000, was endorsed,

> Pay to the order of Fabrication Construction Services
> Anderson Tooling Jeff Anderson [signature]
> for deposit only FCSI

*Id.* at 3. Four other checks payable to ATI, three for $61,667 each and one for $32,410, contained similar endorsements. Ex. 20 at 5-8. These checks were all received and endorsed after Lori left her position as a bookkeeper with ATI and there was no evidence that Lori was involved in the endorsement of these seven checks.

ATI did not show that Jeffery fraudulently appropriated these funds or acted with fraudulent intent or deceit. It was simply not clear from the evidence what arrangement ATI and FabCon (or Dean and Jeffery) had for the flood cleanup and who was entitled to the insurance funds. It was not even clear which company performed the work. Jeffery asserted it was "not correct" that ATI provided the equipment and labor for the job, while Dean maintained ATI had performed most of the work and FabCon performed only a little of the work. Dean testified that he first saw the checks totaling over $400,000, which were dated in 2010, in January of 2012. It is difficult to accept Dean's contention that he was stunned that funds went to FabCon, when he himself acknowledged that the intent was for FabCon to get the insurance job because at the time, he believed he could not receive payment through ATI for the work. ATI did not show that the insurance funds were not supposed to go to FabCon or that Jeffery's endorsement of the checks was wrongful.

Jeffery's conduct in endorsing the checks also did not constitute larceny. Jeffery testified that Dean authorized him to endorse checks on behalf of ATI, suggesting that the checks came lawfully into his hands as an ATI employee. Larceny requires property to have been taken from its owner. The evidence presented at trial did not show that the insurance funds were not supposed to go to FabCon or that Jeffery's endorsement of the checks was wrongful. ATI failed

11

to show that Jeffery embezzled funds or committed larceny by endorsing insurance checks over to FabCon. Since there was no debt for embezzlement or larceny against Jeffery, no such debt could be imputed to Lori.

ATI also asserted that Lori herself had forged Dean's signature on one of the insurance checks and was directly liable for embezzlement or larceny based on this action. The eighth insurance check was different from the other seven insurance checks discussed above. ATI's Complaint alleged that "Jeffery Anderson or someone acting under his direction or aiding and abetting him, forged Dean Anderson's signature" on the check. Complaint ¶ 43. Its endorsement read in part,

> Pay to the order of
> FCSI
> Dean E. Anderson [signature]
> for deposit only [illegible]

Ex. 20 at 4. Dean testified that he had not signed this check. He was not sure whose writing was on the check. Jeffery also testified that he had not signed the check. When questioned about the check, Lori stated she was "100% sure" that she had not signed the check. Moreover, she had not processed any of the insurance checks and it was undisputed that she was not working at ATI at the time the check would have been received. ATI failed to show that Lori or Jeffery embezzled funds or committed larceny by signing Dean's name as an endorsement on the eighth insurance check made payable to ATI. The evidence presented at trial does not support a finding that Lori or Jeffery embezzled funds or committed larceny.

In support of its embezzlement and larceny claims, ATI also argued at trial that Lori committed embezzlement or larceny by entering "bogus loans" in the amounts of $35,000 and $38,000 from Jeffery on ATI's books. ATI's theory was that these nonexistent "loans" remained on ATI's books and Jeffery benefitted when Dean and Jeffery engaged in a transaction in which FabCon's debt to ATI was offset by notes payable from ATI to Jeffery. The evidence presented at trial did not show that Lori committed embezzlement or larceny by entering "bogus" loans from Jeffery to ATI on ATI's books or that Lori acted with the required fraudulent intent or deceit for an embezzlement or larceny claim.

ATI challenged two of the entries on a general ledger document titled "N/P Jeff Anderson" which included entries from February 2006 to December 2010. Ex. 26 at 4. ATI asserted that there was no loan from Jeffery to ATI corresponding to a $35,000 credit dated January 5, 2007 with the memo "loan a" that appeared on the ledger. ATI also asserted that there was no loan from Jeffery to ATI corresponding to a $38,000 credit dated September 30, 2007 with the memo "05-07 loan" that appeared on the ledger.

According to ATI's theory, Jeffery and FabCon benefitted from the false entries in 2010 when ATI and Jeffery offset loans. FabCon owed ATI $78,172.60 and ATI owed Jeffery $95,458.57. Jeffery agreed to satisfy FabCon's debt to ATI through the cancelation of $78,172.60 of the $95,458.57 in funds that ATI owed to him. ATI bookkeeper Sheryll Norton testified that Dean and Jeffery instructed her to do a journal entry by which Jeffery forfeited

12

$78,172.60 of notes payable to offset an ATI account receivable from FabCon. *See* Ex. 26. According to ATI's theory, Jeffery and FabCon also benefited from the false entries when the false loans were used to pay off equipment that ATI had sold to FabCon.[2] If the $35,000 "loan" and the $38,000 "loan" were concocted out of thin air by Lori, ATI argues that it essentially canceled FabCon's debt for no consideration.

The evidence presented at trial did not show that Lori acted with fraudulent intent or deceit in entering the $35,000 credit and thus did not show she committed embezzlement or larceny. Lori confirmed that she was responsible for the $35,000 entry dated January 5, 2007 with the memo "loan a" and that it represented a loan from someone named Andy Vige. Dean explained that Andy Vige was a very good friend of his who owned a manufacturing company and ATI provided him a lot of equipment and tools over the years. Dean testified that Andy Vige loaned ATI $35,000 on January 7, 2007 because he was a good friend. According to Dean, ATI would repay Andy in kind and Andy would get machines from ATI. Lori credibly testified that she was not sure why she chose to put the transaction on the ledger with Jeffery's loans. She testified that this was a one-time, short term loan from Andy Vige and that Andy was not set up as a vendor with ATI. She implied that because there was an intent to pay back the loan quickly, she put the loan on Jeffery's ledger. She also testified that the general ledger showed that $26,000 was paid back to Andy Vige, so it could not have been used as part of the offset of loans between ATI, Jeffery, and FabCon. This may have been sloppy bookkeeping, but the Court is not convinced that the testimony it heard shows that Lori acted with fraudulent intent or deceit when she put this loan on the ledger or with an eye toward embezzling or taking funds from ATI.

As for the $38,000 entry, the Court does not believe that ATI showed this entry represented appropriated funds at all. ATI failed to demonstrate that this entry was in fact a "bogus" loan and did not represent a real loan from Jeffery to the business. During his testimony, Dean admitted that Jeffery did make loans to ATI. ATI would be short on funds and Jeffery would cover the shortfall to make sure checks, including payroll checks, did not bounce. Dean stated that typically when Jeffery loaned ATI money, if Dean was around, Jeffery would let him know "hey, I had to cover you today." Elizabeth Bell, Lori's successor and ATI's bookkeeper from September 2009 to October 2010, corroborated Dean's testimony. She stated that on more than one occasion, Jeffery put his own money in the entity account to make sure ATI could pay payroll. She recalled a $7,000 to $8,000 loan from Jeffery on one occasion. Jeffery also would delay cashing his own check to ensure ATI had sufficient funds to pay its other employees. Sheryll Norton, ATI's bookkeeper from November 2010 to February 2012, testified that Jeffery would go to the bank and take out a personal loan for $10,000 to $15,000 on each occasion. The evidence showed that Jeffery did in fact loan ATI funds on a number of occasions, and ATI did not establish that this was not a real loan.

Additionally, there was no proof that Lori actually made this $38,000 entry, so the Court is equally unconvinced that Lori acted with fraudulent intent or deceit or with an eye toward embezzling or taking funds from ATI due to the appearance of this alleged loan on the ledger.

---

[2] ATI's evidence did not fully describe this transaction. Indeed, it is next to impossible for this Court to completely grasp any of the financial transactions at issue in this case. The Iowa jury reviewed one hundred and sixty exhibits and heard testimony over a thirteen-day trial. This Court heard less than two and a half days of evidence and thus there are clearly tremendous gaps between the story the Iowa jury heard and the one this Court heard.

Lori acknowledged that the $38,000 credit dated September 30, 2007 with the memo "05-07 loan" was entered while she was ATI's bookkeeper, but she testified that she did not recall doing the transaction.

ATI attempted to paint a picture of Lori as having an "overwhelming sense of grievance" that led her to act with fraudulent intent and deceit to harm Dean through ATI. ATI suggested that Lori had a sense that Jeffery had been wronged by Dean and this constituted a motive for her to harm Dean through ATI. Lori testified in the Iowa litigation that she believed ATI had paid Dean and Carol's personal expenses for years and that she created a journal entry on ATI's books in 2007 or 2008 to create a company record of Dean and Carol's personal expenses. *See* Ex. 39 at p. 27. After considering the testimony of all of the parties, the Court is not convinced that Lori harbored ill will toward Dean and Carol that caused her to enter bogus loans on Jeffery's ledger so that Jeffery could use those loans to offset amounts he owed to ATI and wrongfully take funds from ATI. Viewing the totality of the circumstances, ATI did not prove that Lori embezzled or took funds from ATI or that Lori acted with fraudulent intent or deceit in making the entries on the ledger.

In summary, ATI failed to prove its § 523(a)(4) claims against Lori for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny, so those claims will be dismissed.

### III. The Evidence Presented at Trial Did Not Establish a § 523(a)(6) Claim Against Lori for Willful and Malicious Injury.

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." At trial, ATI argued that the injury by Lori took two forms. First, Lori helped steer projects away from ATI to FabCon. Second, Lori entered "fake loans" from Jeffery on ATI's books, making it appear that the company owed him more money than it really did, and that he eventually benefitted from the entries to the detriment of ATI. For the reasons stated below, ATI failed to demonstrate at trial conduct from which the Court can conclude Lori is liable on a debt for willful and malicious injury.

The Supreme Court analyzed the concept of a "willful" injury under § 523(a)(6) in *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). Observing that the word "willful," read to mean "voluntary," "intentional," or "deliberate," modifies the word "injury," the Court reasoned that nondischargeability under § 523(a)(6) "takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Id.* In setting out its definition of "willfulness," the Seventh Circuit has stated that "the requisite intent for purposes of § 523(a)(6) is the intent to injure rather than the intent to act." *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 775 (7th Cir. 2013). "Willfulness can be found either if the debtor's motive was to inflict the injury, or the debtor's act was substantially certain to result in injury." *Id.* at 774 (quotation omitted). If the word "willful" did not constrain the exception in this way, "[e]very traffic accident stemming from an initial intentional act – for example, intentionally rotating the wheel of an automobile to make a left-hand turn without first checking oncoming traffic – could fit the description." *Geiger*, 523 U.S. at 62.

14

To find debt nondischargeable under § 523(a)(6), the Court must also find that there has been a "malicious" injury. The Seventh Circuit has described the maliciousness component as "exist[ing] when one acts in 'conscious disregard of one's duties or without just cause or excuse,'" but maliciousness "does not require ill-will or specific intent to do harm." *Id.* at 774-75 (quoting *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994)).

In sum, "[a] creditor invoking section 523(a)(6) must show that the debt at issue arises from an injury to the creditor's person or property, intentionally caused by the debtor, with some level of malice, wickedness, or a specific intent to inflict injury." *Heinrich v. Bagg (In re Bagg)*, 589 B.R. 650, 656 (Bankr. E.D. Wis. 2018) (citing *Horsfall*, 738 F.3d at 774-75). "Debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Geiger*, 523 U.S. at 64.

At trial, ATI sought to prove that Lori willfully and maliciously injured ATI by misappropriating customers and projects from ATI and taking those customers and projects to Jeffery's competing business, FabCon. The evidence presented at trial does not support a finding that Lori acted with a level of malice, wickedness, or a specific intent to inflict injury on ATI. Lori worked as the bookkeeper at FabCon beginning in 2011. Her job duties included issuing and collecting invoices and paying bills and vendors. She did not help prepare or proofread bids or quotes or solicit customers at FabCon. David Hull, a manager at FabCon, and Jeffery handled the bids, the proposals, and the solicitation of customers at FabCon. Lori and Jeffery both testified that Jeffery never discussed with Lori whether FabCon should take on certain jobs or prepare certain bids.

Lori's only involvement with bids and proposals for work at FabCon was forwarding those bids and proposals to the customers, some of which were former customers of ATI. ATI pointed to emails that Lori sent when forwarding invoices and proposals to FabCon's customers as proof of Lori's "nefarious" actions in helping to steal customers from ATI for FabCon. In one email, Lori stated, "Thank you for your business – we appreciate it very much." Ex. 7. ATI argued that this showed that Lori was part of the conspiracy to take business away from ATI. To the Court, this appears to be simply an email from a secretary forwarding an invoice. In another email to Dr. Pepper, Lori stated, "Your invoice is attached along with a W-9 form. Please remit payment at your earliest convenience. Thank you for your business – we appreciate it very much." Ex. 5. When the employee responded that he had set up FabCon as a vendor for future work, Lori replied, "Thanks so much...look forward to doing business with you!" *Id.* To the Court, this also appears to be simply an email from a secretary setting up an account, not someone trying to steal customers from ATI. The Court agrees with the Iowa jury's finding that Lori did not "intentionally and improperly interfere with any or all of the relationships" ATI had with Dr. Pepper, Whirlpool, Riverbend Plastics, American Ordnance, or others. Stipulation Regarding Jury Verdicts and Jury Instructions from the Iowa State Court Trial ¶ 1, Ex. B, Question Nos. 16-18 (Docket No. 111). Based upon the evidence presented at trial, the Court cannot find that Lori acted with a level of malice, wickedness, or a specific intent to inflict injury on ATI. There was no willful and malicious injury by Lori against ATI based upon this evidence.

ATI also argued that Lori injured ATI by entering "bogus loans" from Jeffery in the amounts of $35,000 and $38,000 on ATI's books and that she did so willfully and maliciously. According to ATI's theory, Jeffery and FabCon benefitted from the false entries in 2010 when ATI and Jeffery offset loans. FabCon owed ATI money and ATI owed Jeffery money. Jeffery agreed to satisfy FabCon's debt to ATI through cancelation of the debt that ATI owed to him. According to ATI's theory, Jeffery and FabCon also benefited from the false entries when the false loans were used to pay off equipment that ATI had sold to FabCon. If the $35,000 entry and the $38,000 entry did not represent real loans from Jeffery, ATI argued that it canceled FabCon's debt of approximately $78,000 for little or no consideration.

Lori confirmed that she was responsible for the $35,000 entry dated January 5, 2007 with the memo "loan a" and that it represented a loan from Dean's friend Andy Vige. Dean confirmed that Andy Vige loaned ATI $35,000 on or around that date. According to Dean, ATI would repay Andy in kind and Andy would get machines from ATI. Lori credibly testified that she was not sure why she chose to put the $35,000 loan on the ledger with Jeffery's loans, but it was a one-time, short term loan and Andy was not set up as a vendor with ATI. Lori also testified that Jeffery's general ledger showed that $26,000 was paid back to Andy Vige, so it could not have been used as part of the offset of loans between ATI, Jeffery, and FabCon. As noted earlier in this decision, there was no evidence the $35,000 entry on Jeffery's ledger resulted from anything more than negligence on Lori's part, and debts arising from reckless or negligently inflicted injuries do not fall within § 523(a)(6)'s scope. *Geiger*, 523 U.S. at 64.

The Court is unable to conclude that the $38,000 entry represented a "bogus loan" at all and therefore is unable to conclude that the entry caused injury to ATI such that it is a debt for willful and malicious injury by Lori. As noted above, Dean, Lori, Jeffery and the two former bookkeepers for ATI, Sheryll Norton and Elizabeth Bell, all testified that Jeffery did in fact loan ATI funds on a number of occasions. ATI did not establish that this was not a real loan. Additionally, there was no proof that Lori actually made this $38,000 entry. The Court is also not convinced that Lori harbored ill will toward Dean and Carol that caused her to enter a $38,000 bogus loan so that FabCon or Jeffery could wrongfully take funds from ATI. ATI did not show that the $38,000 entry resulted in an injury to ATI inflicted by Lori, let alone an injury inflicted willfully and maliciously.

ATI further argued that the evidence solicited at trial might serve to fill in the gaps of the Iowa jury verdict and establish through the application of issue preclusion that Lori was liable on a debt "for willful and malicious injury by the debtor." On summary judgment, this Court rejected ATI's argument that the Iowa jury verdict established that Lori was liable on a debt for willful and malicious injury by the debtor. The evidence presented at trial does not result in a different outcome.

ATI argued on summary judgment that the Iowa jury's affirmative response to the special verdict question related to punitive damages, in which the Iowa jury found that Lori's conduct "constituted willful and wanton disregard for the rights of Anderson Tooling, Inc.," demonstrated that Lori acted willfully and maliciously within the scope of § 523(a)(6). This Court denied ATI's motion for summary judgment, holding that the Iowa jury's verdict that Lori's actions were "willful and wanton" did not meet the definition of "willful and malicious

16

injury" under § 523(a)(6). In its decision, this Court noted that under Iowa law, a degree of recklessness is sufficient to support a finding that conduct is "willful and wanton" and to award punitive damages. However, reckless acts do not establish an exception to discharge under § 523(a)(6). *See Geiger*, 523 U.S. at 59. The Court further found that the evidence presented at the summary judgment stage, including the Iowa jury verdict, did not show a higher level of culpability than negligence or recklessness. It was particularly notable that the Iowa jury awarded $0 in punitive damages despite finding that Lori's conduct was "willful and wanton," which as noted by the Iowa Supreme Court, "indicates the jury did not consider the facts of this case particularly egregious." *Anderson*, 928 N.W.2d at 827 n.6. The Court concluded that the jury's "willful and wanton" finding did not establish a "deliberate or intentional injury" under *Geiger* such that Lori's conduct could be deemed nondischargeable under § 523(a)(6) based upon the jury's finding and issue preclusion.

ATI believes that the evidence that it presented at trial can serve to supplement the record on summary judgment and this Court can now apply issue preclusion and find that Lori is liable on a debt "for willful and malicious injury by the debtor" based upon the Iowa jury's finding that Lori's conduct "constituted willful and wanton disregard for the rights of Anderson Tooling, Inc." This Court disagrees. Following the conclusion of the trial in this adversary proceeding, this Court is left with no clearer idea as to whether the Iowa jury's finding that Lori's conduct "constituted willful and wanton disregard for the rights of Anderson Tooling, Inc." was based on reckless conduct by Lori, which is insufficient to establish an exception to discharge under § 523(a)(6), or intentional conduct by Lori, which would be sufficient to establish an exception to discharge under § 523(a)(6). Regardless, and as noted above, the evidence presented to this Court in this adversary proceeding did not show that Lori acted with malice, wickedness, or a deliberate intent to injure ATI.

ATI also argued on summary judgment that the Iowa jury's finding that Lori "participated in a conspiracy with Jeffery Anderson to appropriate funds and projects belonging to Anderson Tooling, Inc." created a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" under § 523(a)(6). As noted by the Iowa Supreme Court, "civil conspiracy is not in itself actionable; rather it is the acts causing injury undertaken in furtherance of the conspiracy [that] give rise to the action. Accordingly, a claim of civil conspiracy is essentially [a] method [ ] for imposing joint and several liability on all actors who committed a tortious act or any wrongful acts in furtherance thereof." *Anderson*, 928 N.W.2d at 826 (citations omitted). The Iowa jury was instructed that in order for ATI to recover on its conspiracy claim, it had to prove Jeffery "committed the wrongs of conversion, intentional interference with a prospective business advantage, breach of fiduciary duty, or misappropriation of trade secrets" and that Lori and FabCon "participated in a conspiracy with [Jeff] to appropriate funds and projects belonging to ATI." *Id.* at 827. The jury found that Lori and FabCon "participate[d] in a conspiracy with Jeffery Anderson to appropriate funds and projects belonging to Anderson Tooling, Inc." Stipulation Regarding Jury Verdicts and Jury Instructions from the Iowa State Court Trial ¶ 1, Ex. B, Question No. 39 (Docket No. 111). The only tortious wrongs the jury found Jeffery to have committed were interference with ATI's prospective business relationships with Dr. Pepper, Whirlpool, Riverbend Plastics, American Ordnance, or others and breach of his fiduciary duties to ATI under Iowa law. *Id.* at Question Nos. 10-15, 28-30. Notably, the Iowa jury found that Lori did not independently "intentionally and improperly

17

interfere with" ATI's "prospective business relationships with Dr. Pepper, Whirlpool, Riverbend Plastics, American Ordnance, or others." *Id.* at Question Nos. 16-18. The jury also determined that Lori did not breach a fiduciary duty to ATI. *Id.* at Question No. 31.

This Court denied ATI's motion for summary judgment on its § 523(a)(6) claim against Lori, holding that the Iowa jury's finding that Lori was liable on a "conspiracy" claim did not establish a willful and malicious injury by Lori. The Court noted that in cases where courts have found debts based on conspiracy to be nondischargeable under § 523(a)(6), they have had enough evidence to find that the debtor's motive was to inflict the injury or that the debtor's act was substantially certain to result in injury or that the debtor's actions caused the injury. The Iowa jury verdict merely contained a finding that Lori "participated in a conspiracy with Jeffery Anderson to appropriate funds and projects belonging to Anderson Tooling, Inc." Under Iowa law, Lori's participation constituted a knowing and voluntary participation in a common scheme with Jeffery to breach his fiduciary duty and commit tortious interference, but the Court had no evidence before it to show what Jeffery and Lori's scheme was, nor about the acts that Lori and FabCon took in furtherance of the conspiracy, nor about whether Lori's intent rose to the level of willful and malicious. It was not clear to this Court how Lori's liability on the conspiracy claim translated into a "willful and malicious" injury that would be excepted from discharge in this case under § 523(a)(6). This was especially true where the Iowa jury found that Lori did not independently "intentionally and improperly interfere with" ATI's "prospective business relationships with Dr. Pepper, Whirlpool, Riverbend Plastics, American Ordnance, or others" and that Lori did not breach a fiduciary duty to ATI. The Court had no evidence before it to show that Lori's intent and Lori's actions independently satisfied the elements of § 523(a)(6), which required there to be a showing that the debt at issue arose from an injury to ATI, intentionally caused by Lori with some level of malice, wickedness, or a specific intent to inflict injury. Thus, the Court denied summary judgment, concluding that the jury's "conspiracy" finding did not establish a "willful and malicious" injury to ATI such that Lori's conduct could be deemed nondischargeable under § 523(a)(6) based upon the jury's finding and issue preclusion.

ATI believes that the evidence that it presented at trial can serve to supplement the record on summary judgment and this Court can now apply issue preclusion and find that Lori is liable on a debt "for willful and malicious injury by the debtor" based upon the Iowa jury's finding that Lori "participated in a conspiracy with Jeffery Anderson to appropriate funds and projects belonging to Anderson Tooling, Inc." and the Iowa jury's finding that Jeffery "intentionally and improperly interfered" with ATI's "prospective business relationships with Dr. Pepper, Whirlpool, Riverbend Plastics, and American Ordinance" and that Jeffery breached his fiduciary duty to ATI under Iowa law. This Court disagrees. Following the conclusion of the trial in this adversary proceeding, and as noted above, this Court does not believe that the evidence presented to this Court showed that there was a "willful and malicious injury by [Lori]" or that Lori acted with malice, wickedness, or a deliberate intent to injure ATI.

## Conclusion

The evidence presented at trial did not establish a § 523(a)(4) claim against Lori Anderson for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

18

The evidence presented at trial also did not establish a §523(a)(6) claim against Lori Anderson for willful and malicious injury by Lori Anderson.

      IT IS THEREFORE ORDERED: Count 1 against Lori Anderson for Willful and Malicious Damage to Property pursuant to 11 U.S.C. § 523(a)(6) is dismissed.

      IT IS FURTHER ORDERED: Count 2 against Lori Anderson for Fraud or Defalcation while Acting in a Fiduciary Capacity pursuant to 11 U.S.C. § 523(a)(4) is dismissed.

      IT IS FURTHER ORDERED: Count 3 against Lori Anderson for Larceny or Embezzlement pursuant to 11 U.S.C. § 523(a)(4) is dismissed.

#####